IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CARRIE E. CARTER,

       Plaintiff,

   vs.                       Civil Action 2:14-cv-244
                              Judge Frost
                              Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits.  This matter is now before the Court on *Plaintiff Carrie E. Carter's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 11, the *Defendant's Memorandum in Opposition*, Doc. No. 17, and *Plaintiff's Reply*.  Doc. No. 18.

**I. Background**

Plaintiff Carrie E. Carter filed her application for benefits on April 7, 2011, alleging that she has been disabled since October 18, 2010.  *PAGEID* 178.  The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on October 30, 2012, at which plaintiff, represented by counsel, appeared and testified, as did

Eugene Burkhammer, who testified as a vocational expert. *PAGEID* 67. In a decision dated November 30, 2012, the administrative law judge concluded that plaintiff was not disabled from October 18, 2010, the alleged disability onset date, through the date of the administrative decision. *PAGEID* 59-60. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on January 23, 2014. *PAGEID* 30.

Plaintiff was 43 years of age on the date of the administrative law judge's decision. *See PAGEID* 60, 178. She has at least a high school education, is able to communicate in English, and has past relevant work as a patient transport. *PAGEID* 57. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. *PAGEID* 51. She has not engaged in substantial gainful activity since October 18, 2010, her alleged date of onset of disability. *Id*.

**II.Medical Evidence**

A 2008 motor scooter wreck caused pain in plaintiff's lower back and gluteal region. *PAGEID* 304, 502-03. W.L. Greg Siefert, M.D., saw plaintiff on March 2, 2011, for low back pain. An MRI performed on March 11, 2011, revealed an acute appearing annular tear of the left lateral L4-5 disk with associated left disk bulge slightly effacing fat from the ventral aspect of the left L4 nerve root in the exit foramen. *PAGEID* 276-77. The MRI also revealed a right adnexal cystic appearing mass and probable root sleeve cyst on the sacrum. *Id*.

2

Plaintiff underwent bilateral sacroiliac joint injections with a left transforaminal epidural steroid injection at L4-5 on April 11, 2011. *PAGEID* 301, 418. Dr. Siefert diagnosed lumbar radiculopathy, sacroilitis, and annular tear at L4-5. *Id*. Dr. Siefert noted complaints of increased pain with activity and prolonged sitting or lying down. According to Dr. Siefer, plaintiff should not lift more than 20 pounds. *PAGEID* 419.

A September 11, 2010 electromyography revealed a positive tinel's sign over the median nerve at the right wrist, mild carpal tunnel syndrome, and some delay in distal ulnar nerve latency on the right. *PAGEID* 259.

Plaintiff began treatment by Michael B. Shannon, M.D., on October 25, 2010, for pain, numbness, tingling, and swelling in her right hand, as well as trouble grasping and gripping with her right hand. *PAGEID* 429. Dr. Shannon diagnosed carpel tunnel syndrome with distal latency of 4.6 on the right side. *Id*. Dr. Shannon performed a right carpel tunnel release on November 9, 2010. *PAGEID* 430. Plaintiff participated in physical therapy following her surgery, but was discharged on March 28, 2011, due to lack of progress and failure to respond to conservative physical therapy. *PAGEID* 744. At the time, plaintiff continued to experience decreased right hand grip and difficulty opening lids or bottles with her right hand. *Id*. On July 8, 2011, Dr. Shannon renewed plaintiff's prescription for Vicodin and recommended continued hand exercises. *PAGEID* 428. Plaintiff

3

complained of continued pain in her right hand in July 2011. *PAGEID* 821-24.

On December 20, 2011, Dr. Shannon opined that plaintiff had been totally disabled since November 9, 2010. *PAGEID* 896. According to Dr. Shannon, plaintiff would have very little use of her right hand and fingers: plaintiff should lift no more than five (5) pounds, should not engage in repetitive activities, and should not work with hot or cold substances. *Id*. Dr. Shannon reaffirmed this opinion on January 11, 2012. *PAGEID* 895.

On March 30, 2011, Ralph G. Rohner, Jr., M.D., consultatively evaluated plaintiff in connection with a workers' compensation claim and opined that, for a period of 90 days, plaintiff would be precluded from power use or repetitive motion of the right arm and from activity that involves fine manipulation with the fingers. *PAGEID* 296. April 8, 2011, plaintiff underwent a physical capacity evaluation. *PAGEID* 288-92. Plaintiff demonstrated significant pain behaviors with activity. *PAGEID* 291. The examiner noted 5/5 strength in her extremities, but only 3/5 strength with flexion and extension of the right wrist. *PAGEID* 290-91. Plaintiff demonstrated average strength of nine pounds in her right hand and 46.2 pounds in her left. *Id*. According to the physical therapist, plaintiff could not return to her job as a medical transport associate because of significant reduction in her ability to push, pull, and lift. *PAGEID* 292.

4

Steve E. McKee, M.D., reviewed the record for the state agency on May 25, 2011. *PAGEID* 93-94. According to Dr. McKee, plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently. *Id*. Plaintiff could stand and/or walk for about six hours in an eight-hour workday and could sit for about six hours in an eight-hour workday. *Id*. Plaintiff would be limited to occasional pushing and pulling with a maximum of 20 pounds force with her right upper extremity. *Id*. Plaintiff would also be limited in her ability to handle, finger, and engage in fine manipulation with her right hand. *Id*. Dimitri Teague, M.D., also reviewed the record for the state agency and, on October 17, 2011, affirmed Dr. McKee's assessment. *PAGEID* 104-05.

On August 11, 2011, plaintiff was consultatively evaluated by Gerald S. Steiman, M.D., in connection with plaintiff's workers' compensation claim. Upon examination, plaintiff had reduced grip effort secondary to pain, five pounds per square inch grip strength on the right, and 12 pounds per square inch grip strength on the left. *PAGIED* 869. Sensory testing revealed decreased perception to light touch in the distal aspect of the ring finger on the right. *Id*. According to Dr. Steiman, plaintiff's subjective complaints were consistent with the objective physical findings. Dr. Steiman also concluded that plaintiff had reached maximal medical improvement with respect to her right carpel tunnel syndrome. *PAGEID* 870.

5

Plaintiff was examined by Shelly Dunmyer, M.D., for a county Job and Family Services agency on December 5, 2011. *PAGEID* 892-93. Dr. Dunmyer opined that plaintiff could stand or walk for one hour in an eight-hour workday and for less than 30 minutes without interruption; she could sit for two hours in an eight-hour workday and for one hour without interruption. *PAGEID* 893. Plaintiff could carry up to five pounds frequently. *Id*. Plaintiff would be extremely limited in bending and handling, markedly limited in pushing/pulling, and moderately limited in reaching and repetitive foot movements. *Id*. Dr. Dunmyer expected these restrictions to last between nine and 11 months. *Id*.

Plaintiff was determined to be totally disabled from her job and not eligible for vocational rehabilitation services on January 11, 2012. *PAGEID* 898.

On May 8, 2012, Dr. Shannon opined that plaintiff "cannot use her right hand for gripping and grasping as well as she did, leaving her somewhat with weakness there." *PAGEID* 906. According to Dr. Shannon, plaintiff could lift up to 10 pounds rarely, but less than five pounds with her right hand. *PAGEID* 908. Plaintiff could not perform simple grasping, pushing and pulling, or fine manipulation; she could not crawl or climb ladders. *PAGEID* 908-09. Dr. Shannon opined that plaintiff is not capable of any remunerative work requiring the use of her right hand. *PAGEID* 907, 909.

6

Dr. Shannon also completed a mental residual functional capacity form on May 9, 2012. *PAGEID* 910. Dr. Shannon opined that plaintiff's pain causes distraction and, "if placed under stress she would more than likely be placed under more stress." *PAGEID* 912. He opined that plaintiff was markedly impaired in four of 16 areas of social interaction, sustained concentration and persistence, and adaptation. *PAGEID* 911-12. She was moderately impaired in three areas and had no or only mild impairment in the remaining nine categories. *Id.* In a medical source statement dated May 9, 2012, Dr. Shannon opined that plaintiff could rarely lift one to five pounds with her right hand, could never reach, handle, or finger with her right hand, and could occasionally reach, handle, or finger with her left hand. *PAGEID* 913-14.

Plaintiff began mental health counseling for depression in April or June 2012 and attended monthly sessions through at least September 2012. *PAGEID* 78, 933-37, 949.

### III. Administrative Hearing

Plaintiff testified at the administrative hearing that her most significant medical problem is her inability to use her right hand. *PAGEID* 73. Although she is right hand dominant, she has no strength in her right hand, nor can she grasp or grip with that hand. *PAGEID* 70-71, 73. She has difficulty driving a motor vehicle because she cannot shift the car into drive or reverse. *PAGEID* 70-71. She suffers constant pain up to her elbow and her right ring finger is

7

numb.  *PAGEID* 73-74.  She cannot tie shoes, write a full page letter, hold a glass or cup, or use buttons, snaps, or zippers.  *Id*.  She cannot pick up pennies off a table or turn a door knob.  *PAGEID* 74. Her husband helps her dress.  *Id*.

Plaintiff also complained of back pain that interferes with her sleep, requires her to lie down for half the day, and prevents her from sitting for long periods.  *Id*.  Injection therapy did not help the pain.  *PAGEID* 75.

Plaintiff also complained of memory problems and difficulty concentrating, comprehending, focusing, and socializing because of her pain and current situation.  *PAGEID* 75-76.

Plaintiff testified that she last worked as a patient transport associate.  *PAGEID* 72-73.  That position required extensive lifting, pushing, pulling, and the constant use of her hands.  *Id*.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge.  *PAGEID* 79- 82.  According to the vocational expert, such an individual could not perform plaintiff's past relevant work as a patient transporter, but could perform such jobs as "[h]ousekeeping cleaning" and mail clerk. *PAGEID* 81.

**IV. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of status post carpel tunnel release of the right

8

hand, lumbar degenerative changes, depression, and anxiety.  *PAGEID 51.*  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform light work as defined in 20 CFR 404.1567(b).  The claimant is limited to light and sedentary exertional levels; restricted to use of the right hand to assist or stead objects being held by the left hand, and capable of only low stress work identified as minimal contact with others at the work site with few changes in the work setting.

*PAGEID 52-53.*  Although this RFC precludes the performance of plaintiff's past relevant work in patient transport, the administrative law judge relied on the testimony of the vocation expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as housekeeping cleaner and mail clerk.  *PAGEID 57-58.*  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from October 18, 2010, through the date of the administrative decision.  *PAGEID 59-60.*

**V. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595

(6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff argues that the administrative law judge violated the treating physician rule in evaluating Dr. Shannon's opinions. *Statement of Errors*, pp. 12-15. The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Even if the opinion of a treating provider is not

entitled to controlling weight, an administrative law judge is nevertheless required to determine how much weight should be given to the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole. 20 C.F.R. § 404.1527(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.,* reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). This special treatment afforded to the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Plaintiff began treating with Dr. Shannon on October 25, 2010, for pain, numbness, tingling and swelling, and difficulty grasping and

11

gripping with her right hand. *PAGEID* 429. Dr. Shannon diagnosed carpel tunnel syndrome and performed an endoscopic release of the carpel tunnel on the right on November 9, 2010. *PAGEID* 429-30. Dr. Shannon continued to treat plaintiff for carpel tunnel syndrome through 2012. *See PAGEID* 428, 906-14, 961. On several occasions, Dr. Shannon opined that plaintiff was totally disabled, *PAGEID* 895-96, 907-09, and had functional limitations due to her carpel tunnel syndrome. *PAGEID* 895-96, 906-14. On May 8, 2012, Dr. Shannon opined that plaintiff "cannot use her right hand for gripping and grasping as well as she did, leaving her somewhat with weakness there." *PAGEID* 906. According to Dr. Shannon, plaintiff can lift up to 10 pounds rarely, but less than five pounds with her right hand. *PAGEID* 908. Plaintiff cannot perform simple grasping, pushing/pulling, or fine manipulation, and she cannot crawl or climb ladders. *PAGEID* 908-09. Noting plaintiff's limitations in the right hand and arm, Dr. Shannon opined that plaintiff is not capable of any remunerative work requiring the use of her right hand. *PAGEID* 907, 909. In a medical source statement dated May 9, 2012, Dr. Shannon opined that plaintiff could rarely lift one to five pounds with her right hand, could never reach, handle, or finger with her right hand, and could occasionally reach, handle, or finger with her left hand. *PAGEID* 913-14. Dr. Shannon also completed a mental residual functional capacity form on May 9, 2012, in which he opined that plaintiff's pain causes distraction and, "if placed under stress she would more than likely be

12

placed under more stress." *PAGEID* 912.  He opined that plaintiff was markedly impaired in four of 16 areas of social interaction, sustained concentration and persistence, and adaptation.  *PAGEID* 911-12.  She was moderately impaired in three areas.  *Id.*

Noting that Dr. Shannon is a neurosurgeon, the administrative law judge evaluated Dr. Shannon's opinions as follows:

> In January 2012, Michael Shannon, M.D., provided an assessment of the claimant's capacity noting less than sedentary lifting and carrying capacity and frequent ability to perform postural activities, stand, walk, and sit.  Hand restrictions of handling, fingering, and repetitive activities were worse on the right.  Dr. Shannon indicated an estimated return to work date of March 2012 (Exhibit 17F).  In May 2012, Dr. Shannon provided a summary assessment of the claimant's condition and treatment noting her reports of carpal tunnel, her release surgery, subsequent work hardening, and some reports of back pain. Dr. Shannon opined the claimant was incapable of remunerative work where she has to use her right hand and found her accordingly totally disabled for the "conditions of her claim as it is" (Exhibit 20F/2-3).  He provided specific limitations noting the claimant could lift less than 5 pounds with the right had [sic] rarely with restrictions to repetitive simple grasping, pushing and pulling, and fine manipulation.  Postural limitations included frequent bending and climbing steps, occasional squatting, and never crawling or climbing ladders because of the use of her hand.  He further noted occasional use of the left hand for handling, reaching, and fingering, but without an identified reason (Exhibit 20F).  The claimant had restrictions in the residual functional capacity in this decision precluding significant use of her right hand as supported by Dr. Shannon's opinions.  However, her limitations in the left hand were not supported and from his opinions aggregately it is unclear if his limitations were intended to be applied bilaterally.  It is unclear from his opinion if his limitations were intended to preclude the claimant from work or preclude the claimant from work related to the use of the right hand performing the work she previously did.  Given the evidence supporting only limitation in the right hand in treatment notes, the residual functional capacity is consistent with significant

13

limitation with the use of the right hand. Also, Dr. Shannon indicated a return to work date. Thus, Dr. Shannon's opinion had consideration in that his limitations, as supported by medical evidence had bearing on the residual functional capacity; however, limitations inconsistent with medical findings in the use of the left hand were not adopted.

Dr. Shannon also provided some mental health limitations. He noted moderate restrictions in working in proximity to others, adapting to changes, and behaving predictably. Mild restriction in responding appropriately to peers, maintaining socially appropriate behavior, cooperating, using judgment, complete tasks independently, remembering procedures, and being aware of hazards. The claimant had marked restrictions in performing a normal workday/workweek, maintaining attention, tolerating work pressures, and meeting production expectations. The limitations were secondary to pain from the claimant's hand (Exhibit 20F). While Dr. Shannon's opinions had some weight his mental health limitations were inconsistent with the claimant's mental health treatment notes. The claimant mainly addressed stress related problems in dealing with her family in her mental health treatment. Therefore, her limitations were related to stress at work.

*PAGEID* 54-56.

The administrative law judge's analysis is sufficiently specific as to the weight given to Dr. Shannon's opinions and the reasons for assigning that weight. Plaintiff's arguments to the contrary notwithstanding, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused."). Further, the administrative law judge's reasons for discounting Dr. Shannon's opinions are supported by

14

substantial evidence.  Notably, Dr. Shannon's treatment notes do not support his opinion with regard to left hand limitations, and his treatment notes, as well as plaintiff's mental health treatment notes, *see PAGEID* 933-37, do not support the mental limitations in Dr. Shannon's May 9, 2012 opinion.

Plaintiff next argues that the administrative law judge violated SSR 96-6p by relying on the opinions of the state agency reviewing physicians, *i.e.,* Dr. McKee's May 25, 2011 opinion and Dr. Teague's October 17, 2011 opinion.  Plaintiff challenges these opinions because they were more than one year old at the time of the administrative law judge's decision and were formed without the benefit of subsequent evidence and medical opinions.  *Statement of Errors*, pp. 14-15.  Plaintiff's argument in this regard is not well taken.

Social Security Ruling 96-6p provides, in part:

1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.

2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

SSR 96-6p, 1996 WL 374180 (July 2, 1996).  The Ruling does not require an administrative law judge to reject a state agency medical opinion when the claimant continues treatment after the opinion was formed or when additional medical records are generated after the opinion is

15

rendered. "[T]he regulations provide only that an [administrative law judge] should give more weight to an opinion that is consistent with the record as a whole." *Williamson v. Comm'r of Soc. Sec.*, No. 1:11-cv-828, 2013 WL 121813, at *7 (S.D. Ohio Jan. 9, 2013) (citing 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)). It is true that remand may be appropriate where the administrative law judge relied on an opinion made without the benefit of substantial evidence generated after the date of the opinion. *See e.g.*, *Ford v. Astrue*, No. 2:11-cv-1139, 2013 WL 372464, at *6 (S.D. Ohio Jan. 30, 2013) *report and recommendation adopted sub nom. Ford v. Colvin*, 2:11-cv-1139, 2013 WL 765654 (S.D. Ohio Feb. 28, 2013)). However, this is not such a case. Notably, plaintiff has not cited any evidence in support of her argument, and there is no indication that plaintiff's conditions worsened after October 2011. Moreover, the administrative law judge had the opportunity to review the entire record and, although the administrative law judge relied on the opinions of Drs. McKee and Teague in his RFC assessment, that RFC is more restrictive than those opinions would suggest.

Finally, plaintiff argues that the administrative law judge erred in relying on the testimony of the vocational expert. *Statement of Errors*, pp. 16-18. Plaintiff specifically argues, first, that it was improper to rely on the vocational expert's testimony because there is no documentation of the vocational expert's qualifications or experience in the record. *Id.* Second, plaintiff argues that the

16

administrative law judge erred in relying on the vocational expert's testimony because the vocational expert did not have a copy of the *Dictionary of Occupational Titles* ("DOT") available during the administrative hearing and was therefore unable to provide the DOT job descriptions for he jobs identified by him and because his testimony conflicts with the DOT. *Statement of Errors*, pp. 16-18. Plaintiff presented these challenges to the administrative law judge after the administrative hearing by way of letter, *PAGEID* 958-59, and the administrative law judge addressed these challenges in his administrative decision. *See PAGEID* 58-59. Plaintiff's arguments in this regard are not well taken.

The notice of the administrative hearing indicated that Bruce S. Growick would testify as a vocational expert. *PAGEID* 163. However, it is the résumé of vocational expert John R. Finch that is reflected in the record. *PAGEID* 166-67. As noted *supra*, Eugene Burkhammer actually testified as a vocational expert at the administrative hearing and it was his testimony upon which the administrative law judge relied in finding that plaintiff could perform work that exists in significant numbers despite her impairments. Plaintiff complains that the administrative law judge erred in relying on the testimony of Mr. Burkhammer without first providing documentation of the latter's qualifications or experience: "[K]nowing and being able to consider the VE's professional qualifications is an essential part of the weighing and evaluating of that opinion testimony." *Plaintiff's*

17

*Reply*, P. 3.

Plaintiff points to no binding authority for the proposition that an administrative law judge must affirmatively qualify a vocational expert on the record. The Hearings, Appeals and Litigation Law Manual of the Social Security Administration ("HALLEX") requires an administrative law judge to "ensure that the record contains an accurate statement of the [vocational expert's] professional qualification," HALLEX I-2-5-55, 1994 WL 637383 (Sept. 28, 2005), but the United States Court of Appeals for the Sixth Circuit has held that the HALLEX is not binding authority. *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008). Moreover, plaintiff raised no objection to the record in this regard at the administrative hearing, *i.e.*, at a time when the administrative law judge may have been in a position to correct the record. It is true that the plaintiff raised this objection in a letter sent after the administrative hearing. The administrative law judge considered but rejected plaintiff's complaint in this regard, reasoning as follows:

> Furthermore, the attorney suggested he was not given an opportunity to object to or question the vocational expert at the hearing regarding his qualifications. His curriculum vitae was not made part of the record in this case. However, the attorney spent significant time questioning the vocational expert after the undersigned questioned him regarding the claimant's past work and work in the national economy. The attorney spent 7 minutes of the 45 minute hearing questioning the claimant and ended by stating it was all the questions he had of the vocational expert. He was given ample time and opportunity to question the vocational expert regarding his experience, knowledge, credentials, and to contest to [sic] his abilities and chose not to do so at the hearing.

18

*PAGEID* 59. Plaintiff had notice that the vocational expert's qualifications were not part of the record at the time of the administrative hearing but raised no objection on that basis at the hearing.  Moreover, and as the administrative law judge noted, plaintiff had the opportunity at the administrative hearing to inquire into the vocational expert's qualifications but failed to do so. Under these circumstances, plaintiff will not now be heard to challenge the Commissioner's decision on this basis.

Plaintiff also contends that vocational expert's testimony was inconsistent with the DOT. Administrative law judges have an "affirmative responsibility" to ask a vocational expert if the expert's testimony conflicts with the information provided in the DOT and to "obtain a reasonable explanation for . . . apparent conflict[s]" if the vocational expert's testimony "appears to conflict with the DOT."  SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).  In the case presently before the Court, both the administrative law judge and plaintiff's counsel asked the vocational expert whether his testimony was consistent with the DOT, and the vocational expert testified that it was.  *PAGEID* 82, 83. The administrative law judge expressly considered, and rejected, plaintiff's argument that the vocational expert's testimony was inconsistent with the DOT:

> The attorney subsequently submitted a statement to the record suggesting the positions noted above [, i.e., housekeeping cleaner and mail clerk,] are not consistent with the requirements for the positions without citing to specific rules, regulations, or Dictionary of Occupational Titles elements suggesting the bilateral use of both upper extremities for these positions.   The attorney at the

19

hearing requested additional information regarding the position of housekeeper and mail clerk "clearly" require the use of the bilateral upper extremities (Exhibit 28F). The Dictionary of Occupational Titles under 209.687-026 for a mail clerk identifies tasks including opening envelopes "by hand or machine" stamping the date and time of a receipt on incoming mail, sorting mail, readdressing undeliverable mail, examining outgoing mail for appearance and seals, and stamping mail "by hand or with a postage meter". Likewise the job for housekeeper under 323.687-014, identifies cleaning, sweeping, scrubbing, waxing using mops or brooms, vacuuming, dusting, polishing, emptying wastebaskets, etc. It is conceivable one would use one or two hands for each of these tasks. Additionally, the vocational expert stated his knowledge of the job did not specify the use of the bilateral upper extremities. He further suggested these activities could be performed with just one hand or one hand with the assistance of a second hand. This is consistent with the Dictionary of Occupational Titles definitions for reaching, handling, and fingering as the use of one hand is in the singular form and does not identify both hands specifically. [Plaintiff's attorney] further suggested his opinion was consistent with both his knowledge of the Dictionary of Occupational Titles and his experience of the activities perform [sic] in the national economy. The undersigned gave the vocational expert's testimony weight in assessing whether these jobs still were fitting with the jobs identified (SSR 00-4p).

. . .

Given a description of the jobs provided in the Dictionary of Occupational Titles, the residual functional capacity in this decision, the vocational expert testimony, and the rules applied in this case, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles and the expert's experience base and is therefore accepted (SSR 00-4p).

*PAGEID* 58-59. The administrative law judge weighed the evidence and determined that the vocational expert's testimony was consistent with the DOT. The administrative law judge dedicated more than two full

pages of his opinion to his discussion of the vocational expert's testimony and the arguments raised by plaintiff's counsel and found that, although plaintiff could not perform her past relevant work, she could perform a significant number of jobs in the national economy. *PAGEID* 57-59.  That finding is supported by the testimony of the vocational expert.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) ("In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments.") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239, 241 (6th Cir. 2002)).  Plaintiff disagrees with the administrative law judge's evaluation of the evidence, *see Plaintiff's Reply*, p. 3, but this Court is not permitted to reweigh that evidence. *See Brainard*, 889 F.2d at 681.

It is well-settled that the Commissioner's decision, if supported by substantial evidence, must be affirmed even if the plaintiff's position is also supported by substantial evidence.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).  Having carefully considered the entire record in this action, the Court concludes that the administrative law judge applied the correct standards and his decision is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

21

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


      *s/  Norah McCann King*
      Norah McCann King
    United States Magistrate Judge

October 6, 2014

22